EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Pueblo de Puerto Rico<br><br>Peticionario<br><br>v.<br><br>Nataniel Acosta Pérez<br><br>Recurrido | Certiorari<br><br>2014 TSPR 56<br><br>190 DPR ____ |

Número del Caso: CC-2013-889

Fecha: 9 de abril de 2014

Tribunal de Apelaciones, Región Judicial de Ponce

Oficina de la Procuradora General:

Lcda. Margarita Mercado Echegaray
Procuradora General

Lcda. Mónica Cordero Vázquez
Procuradora General Auxiliar

Abogados de la Parte Recurrida:

Lcdo. Nicolás Rivera Pérez

Materia: Procedimiento Criminal – Alegaciones pre-acordadas: Imposibilidad de rechazar acuerdo después de ser aprobado por el juez o jueza.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Pueblo de Puerto Rico

    Peticionario

       v.                 CC-2013-889     Certiorari

Nataniel Acosta Pérez

    Recurrido

Opinión del Tribunal emitida por el Juez Presidente señor HERNÁNDEZ DENTON

San Juan, Puerto Rico, a 9 de abril de 2014.

En esta ocasión, debemos determinar si un juez puede, *motu proprio*, dejar sin efecto una alegación preacordada que ya fue aceptada por el tribunal por el cambio de posición de la víctima al respecto. Resolvemos que no. Por consiguiente, revocamos la Sentencia del Tribunal de Apelaciones que resolvió lo contrario.

I.

El Ministerio Público presentó una denuncia contra el Sr. Nataniel Acosta Pérez por infringir el Art. 2.8 de la Ley Núm. 54 de 15 de agosto de 1989, según enmendada, conocida como "Ley para la prevención e intervención con la violencia doméstica", 8 L.P.R.A. secs. 601 *et seq.* (Ley Núm.

54). Particularmente, le imputó violar una orden de protección expedida a favor de su ex pareja consensual al comunicarse con ella en varias ocasiones por mensajes de texto. El Tribunal de Primera Instancia determinó causa para arresto. El señor Acosta Pérez renunció a la vista preliminar, se determinó causa para acusar y se presentó la acusación correspondiente por violación al Art. 2.8 de la Ley Núm. 54, 8 L.P.R.A. sec. 628, el cual dispone lo siguiente:

> Cualquier violación a sabiendas de una orden de protección expedida de conformidad con este capítulo, será castigada como **delito grave de tercer grado** en su mitad inferior.
>
> No obstante, lo dispuesto por la Regla 11 de las Reglas de Procedimiento Criminal, según enmendada, Ap. II del Título 34, aunque no mediare una orden a esos efectos, todo oficial del orden público deberá efectuar un arresto, si se le presenta una orden de protección expedida al amparo de este capítulo o de una ley similar, contra la persona a ser arrestada, o si determina que existe dicha orden mediante comunicación con las autoridades pertinentes y tienen motivos fundados para creer que se han violado las disposiciones del mismo. (Énfasis suplido).

El día de la vista sobre lectura de acusación, la defensa del señor Acosta Pérez y el Ministerio Público suscribieron un preacuerdo titulado "Recomendación de alegaciones preacordadas". Este consistía en reclasificar el Art. 2.8, *supra*, a Art. 3.1 de la Ley Núm. 54, 8 L.P.R.A. sec. 631, que establece que "[t]oda persona que empleare fuerza física o violencia psicológica, intimidación o persecución en la persona… con quien sostuviere o haya sostenido una relación consensual… para causarle grave daño emocional, incurrirá en **delito grave de cuarto grado** en su mitad superior". (Énfasis suplido). Según lo acordado, el

Ministerio Público sugeriría una pena de 1 año, 9 meses y 1 día, y referiría a informe pre-sentencia para un posible programa de desvío. La Moción sobre Alegación Preacordada – firmada por el acusado, su abogado y la Fiscal del caso- advertía que, si el Tribunal no aceptaba la recomendación del Ministerio Público, el acusado no tendría derecho a retirar la alegación de culpabilidad hecha. Apéndice, pág. 29. El acusado renunció a su derecho a juicio por jurado y se declaró culpable.

El Tribunal de Primera Instancia aceptó el preacuerdo. Acto seguido, refirió el caso a informe pre-sentencia para evaluar si el acusado cualificaba o no para el programa de desvío establecido en el Art. 3.6 de la Ley Núm. 54, 8 L.P.R.A. sec. 636.

Sin embargo, en la vista de sentencia, la ex pareja consensual del acusado se opuso al programa de desvío y manifestó que temía por su seguridad, a pesar de que inicialmente había expresado su conformidad con dicho proceder. En vista de la oposición de la perjudicada, el Tribunal de Primera Instancia determinó que "el cambio de posición de la parte perjudicada afecta la alegación de culpabilidad y la Regla 72 alcanzada en este caso". Apéndice, pág. 23. De esta forma, dejó sin efecto la alegación de culpabilidad y revirtió el caso a la etapa de vista preliminar, sin que la defensa o el Ministerio Público lo hubieran solicitado.

En desacuerdo, el Ministerio Público acudió ante el Tribunal de Apelaciones. Ese foro denegó el recurso

presentado, por entender que la oposición de la perjudicada a la concesión del programa de desvío constituye un incumplimiento del Ministerio Público con la alegación preacordada.

Todavía insatisfecho, el Ministerio Público representado por la Oficina de la Procuradora General acudió ante nos. Enfatizó que en este caso la defensa no solicitó retirar la alegación preacordada, sino que fue el foro primario quien *motu proprio* levantó el asunto. Esto, sin que estuviera presente alguna de las instancias que le permitirían así hacerlo, a saber, falta de voluntariedad de la alegación realizada, representación legal inadecuada o algún otro factor que afecte la conciencia que el señor Acosta Pérez tenía al acoger el preacuerdo. Asimismo, el Ministerio Público sostuvo que, aunque la oposición de la perjudicada a la concesión del programa de desvío debe ser considerada al determinar la sentencia a ser impuesta, ello de por sí no era suficiente para invalidar el acuerdo suscrito y dejar sin efecto la alegación de culpabilidad aceptada por el Tribunal. Además, destacó que el Estado cumplió lo acordado, pues no garantizó al imputado el programa de desvío, sino que se comprometió a recomendar la pena señalada y a referir el caso para que se **"ausculte** si cualifica o no" para dicho programa. *Certiorari*, pág. 12. (Énfasis en el recurso).

Expedimos el recurso. El Ministerio Público solicitó que acogiéramos su petición de *certiorari* como el alegato de la parte peticionaria. En cambio, la parte recurrida no

compareció, por lo que el caso quedó sometido sin el beneficio de su comparecencia.

II.

Una persona acusada de cometer un delito puede hacer una de dos alegaciones: culpable o no culpable. Regla 68 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 68. Véase Pueblo v. Santiago Agricourt, 147 D.P.R. 179, 192 (1998). Si hace una alegación de culpabilidad, el acusado renuncia a varios derechos constitucionales y estatutarios, entre los que figuran el derecho a un juicio justo, imparcial y público; el derecho a ser juzgado por un juez o jurado; el derecho a que se establezca su culpabilidad más allá de duda razonable; y el derecho a presentar evidencia a su favor y a rebatir prueba en su contra. Pueblo v. Santiago Agricourt, supra; Díaz Díaz v. Alcaide, 101 D.P.R. 846, 854 (1973). Si el acusado hace una alegación de no culpable, el Ministerio Fiscal tiene que probar su culpabilidad más allá de duda razonable. Íd.

En vista de que el acusado que se declara culpable renuncia a derechos constitucionales y estatutarios, los tribunales deben ser muy cuidadosos al decidir si aceptar o no la alegación. Pueblo v. Santiago Agricourt, supra; Díaz Díaz v. Alcaide, supra. Al respecto, la Regla 70 de Procedimiento Criminal, supra, dispone que "[e]l tribunal no aceptará la alegación de culpabilidad sin determinar primeramente que la misma se hace voluntariamente, con conocimiento de la naturaleza del delito imputado y de las consecuencias de dicha alegación". De hecho, el tribunal

puede negarse a admitir una alegación de culpabilidad y ordenar la anotación de una alegación de no culpable. Regla 71 de Procedimiento Criminal, *supra*. Asimismo, el tribunal puede permitir el retiro de una alegación de culpabilidad en cualquier momento antes de dictar sentencia. Íd. Lo mismo aplica a la alegación preacordada de culpabilidad, como producto de una negociación con el Ministerio Público. Pueblo v. Figueroa García, 129 D.P.R. 798, 804 (1992), citando a Brady v. United States, 397 U.S. 742 (1970).

En Pueblo v. Mojica Cruz, 115 D.P.R. 569 (1984), reconocimos la validez de las alegaciones preacordadas de culpabilidad y sus beneficios para el Sistema de Justicia Criminal. Véanse Pueblo v. Marrero Ramos, Rivera López, 125 D.P.R. 90, 96 (1990); Boykin v. Alabama, 395 U.S. 238, 242-244 (1969). Luego, la Asamblea Legislativa codificó y reguló lo adoptado en Pueblo v. Mojica Cruz, *supra*, al aprobar la Regla 72 de Procedimiento Criminal, *supra*. El inciso (1) de esta Regla establece que un acusado puede hacer una alegación de culpabilidad a cambio de que el Ministerio Público se comprometa a: (1) pedir que se archiven otros cargos pendientes contra el imputado; (2) eliminar la alegación de reincidencia; (3) recomendar una sentencia específica o no oponerse a la solicitud de la defensa sobre una sentencia en particular, entendiéndose que el tribunal no estará obligado a dictar la sentencia recomendada o solicitada; o (4) acordar que cierta sentencia en particular dispone adecuadamente del caso. Véase Pueblo v. Suárez Ramos, 163 D.P.R. 460, 470 (2004).

Si el Ministerio Público y el acusado acuerdan el tercer curso de acción, el Tribunal de Primera Instancia "**advertirá al imputado que si la recomendación del fiscal o la solicitud de la defensa no es aceptada por el tribunal, el imputado no tendrá derecho a retirar su alegación**". (Énfasis suplido). Regla 72(2) de Procedimiento Criminal, *supra*. Véase, además, Pueblo v. Santiago Agricourt, *supra*, pág. 198.

La Regla 72, *supra*, también establece que, **si el tribunal acepta la alegación preacordada, notificará al imputado que esta ha sido incorporada y constituirá parte de la sentencia.** Regla 72(3) de Procedimiento Criminal, *supra*. Si rechaza la alegación preacordada, advertirá al imputado que el tribunal no está obligado por el acuerdo, le brindará la oportunidad de retirar su alegación y le advertirá que, de persistir en su alegación de culpabilidad, la determinación final del caso podrá serle menos favorable que la acordada entre la defensa y el Ministerio Público. Regla 72(4) de Procedimiento Criminal, *supra*. Véase, además, Betancourt Rojas v. Tribunal Superior, 90 D.P.R. 747, 753 (1964).

Al ponderar si acepta una negociación preacordada, el tribunal debe asegurarse de que esta fue efectuada "con pleno conocimiento, conformidad y voluntariedad del imputado; que es conveniente a una sana administración de justicia, y que ha sido lograda conforme a derecho y a la ética". Regla 72(7) de Procedimiento Criminal, *supra*. Véase O.E. Resumil, Derecho Procesal Penal, Oxford, Butterworth Legal Publishers, 1993, T. II, págs. 130-131. También debe cerciorarse de que el imputado sea consciente de todos los efectos y repercusiones

que tendrá su alegación y que se han observado los requisitos establecidos en la Ley para la Protección de Testigos y Víctimas,[1] los cuales discutiremos más adelante. Íd. Asimismo, el tribunal deberá asegurarse de que existe base suficiente en los hechos para sostener la alegación de culpabilidad. Pueblo v. Suárez Ramos, *supra*, págs. 470-471.

En cuanto a su naturaleza jurídica, hemos resuelto que las alegaciones preacordadas dependen de la aprobación final del tribunal para consumarse y vincular a las partes. Pueblo v. Santiago Agricourt, *supra*, pág. 196; Pueblo v. Figueroa García, *supra*, págs. 809-810. Mientras el tribunal no haya aprobado el acuerdo, no existe bilateralidad entre las obligaciones de las partes y estas pueden retirar su consentimiento. Íd. Una vez lo acepta y el acusado se declara culpable, cualquier intento de las partes de retirar lo acordado es un incumplimiento del acuerdo. Véase, además, E. L. Chiesa Aponte, Derecho Procesal Penal de Puerto Rico y Estados Unidos, Bogotá, Ed. Forum, 1995, Vol. III, pág. 211.

Con relación a lo anterior, en Pueblo v. Figueroa García, 129 D.P.R. 798, 806-706 (1992), expresamos que

> es preciso distinguir entre lo que constituye el retiro de una alegación preacordada y el incumplimiento con la misma. Ambos conceptos difieren en términos del momento en que se pretende deshacer el acuerdo y sus efectos. Específicamente, **se *retira* una alegación preacordada si se pretende deshacer el acuerdo antes de que el imputado haga alegación de culpabilidad y la misma sea aceptada por el tribunal. Por otra parte, se *incumple* con la misma si se pretende deshacer el acuerdo una vez el**

---

[1] Ley Núm. 22 de 22 de abril de 1988, 25 L.P.R.A. sec. 973 *et seq*. (Ley para la Protección de Testigos y Víctimas).

**acusado ha hecho alegación de culpabilidad y la misma ha sido aceptada por el tribunal.**

Esta diferencia es importante porque al hacer alegación de culpabilidad *el acusado renuncia a valiosos derechos constitucionales, e.g.* el derecho a que se pruebe su culpabilidad más allá de duda razonable; el derecho a un juicio justo, imparcial y público; el derecho a ser juzgado ante un juez o Jurado, y a presentar evidencia a su favor y rebatir la evidencia presentada en su contra. Mientras que si la alegación preacordada se retira con anterioridad a que el acusado haga alegación de culpabilidad, no está involucrada renuncia a derecho constitucional alguno. (Énfasis suplido). Íd.

En cuanto al tribunal, hemos resuelto que este tiene discreción para aceptar, rechazar, modificar o permitir el retiro de una alegación preacordada. Pueblo v. Marrero Ramos, Rivera López, 125 D.P.R. 90, 97 (1990); Pueblo v. Franco, 70 D.P.R. 786, 789 (1950). No obstante, esta discreción será derrotada si el tribunal se niega a permitir que el acusado retire una alegación de culpabilidad hecha sin comprender la ley y los hechos o bajo una falsa representación, cuando surge alguna duda de la culpabilidad del acusado o cuando este tiene alguna defensa meritoria, o cuando se cumplen mejor los fines de la justicia sometiendo el caso a la consideración del juez o jurado para su fallo. Íd.; Betancourt Rojas v. Trib. Superior, 90 D.P.R. 747, 757 (1964). También procede el retiro de la alegación de culpabilidad cuando medie coacción, fraude o inadvertencia. Íd.

Ahora bien, **"[u]na vez el acusado hace la correspondiente alegación de culpabilidad y el tribunal la acepta, posteriormente el juez no puede rechazar el acuerdo"**

pues ello menoscabaría los derechos constitucionales del acusado. (Énfasis suplido). Pueblo v. Pérez Adorno, 178 D.P.R. 946, 960 (2010). Véanse, además, U.S. v. Ritsema, 89 F.3d 392 (7mo Cir. 1996); United States v. Blackwell, 694 F.2d 1325 (C.D. A.C. 1982).

En fin, las alegaciones preacordadas son de gran valor para nuestro Sistema de Justicia Criminal, ya que permiten conceder ciertos beneficios al acusado si este se declara culpable, descongestionan los calendarios de los tribunales y propician que se enjuicien a los acusados dentro de los términos de rápido enjuiciamiento. Pueblo v. Santiago Agricourt, *supra*, pág. 194; Pueblo v. Marrero Ramos, Rivera López, *supra*. Como hemos reiterado, "[s]in las alegaciones preacordadas sería muy difícil, si no imposible, enjuiciar a todas las personas acusadas de cometer delitos dentro de los términos mandados por el ordenamiento procesal y por la Constitución". Pueblo v. Suárez Ramos, *supra*, pág. 469; Pueblo v. Figueroa García, *supra*, pág. 804.

Por otra parte, la Ley de Protección a las Víctimas y Testigos, *supra*, establece que toda víctima de delito tendrá derecho "**a ser consultad[a]** antes de que se proceda a transigir una denuncia o acusación contra el autor del delito". (Énfasis suplido). 25 L.P.R.A. sec. 973a(g)(1). En Pueblo v. Dávila Delgado, 143 D.P.R. 157 (1997), evaluamos el significado y el alcance de la frase "ser consultado". Tras reconocer que las víctimas de hechos delictivos juegan un papel extraordinariamente importante en el procesamiento de sus victimarios, concluimos lo siguiente:

*no* podemos enfatizar lo suficiente el hecho de que, no obstante los derechos que le concede esta clase de legislación a las víctimas o testigos de un delito, *éstas no son parte para efectos del proceso criminal*; careciendo éstas, en consecuencia, de los derechos que, de ordinario, tienen las partes en un procedimiento judicial. De forma tal que examinado en su *justa perspectiva*, el derecho que se concede en el antes transcrito Art. 2(g) de la Ley de Protección a las Víctimas y Testigos, a "ser consultado", *equivale a ser oído, a que su opinión o parecer sea tomado en consideración por el fiscal antes de que éste llegue a un acuerdo con el acusado y de cuestionar, ante el foro judicial, el que ello así no se haya hecho. Dicho de otra forma, de ninguna manera puede ser interpretado el derecho a ser consultado, que concede la citada ley, como que la víctima o testigo tiene el poder de vetar la actuación o el curso de acción que el Fiscal entienda procedente seguir en el caso.* Dicha determinación es de la *exclusiva inherencia* del Ministerio Público. (Énfasis en el original). Íd., págs. 167-168.

Luego, hicimos la salvedad de que la Regla 72 de Procedimiento Criminal, *supra*, concede específicamente al tribunal juzgador la discreción para aprobar o no la alegación preacordada alcanzada por la defensa y el Ministerio Público. Pueblo v. Dávila Delgado, *supra*, pág. 171. Incluso, destacamos que **"el tribunal de instancia, aun cuando acepte, en principio, la alegación preacordada, *no* está obligado a seguir las recomendaciones que le hagan las partes sobre una sentencia específica a imponerse al imputado de delito. Esto es, el tribunal tiene *discreción* para imponer la sentencia que entienda procedente en derecho"**. (Énfasis en el original y suplido). Íd.

Por último, para resolver el caso ante nos, es necesario evaluar lo dispuesto por el Art. 3.6 de la Ley Núm. 54, *supra*, titulado "Desvío del procedimiento". Este permite

someter a la persona convicta de violencia doméstica a libertad a prueba, con la condición de que participe en un programa de reeducación y readiestramiento. Íd. Luego, dispone que "[e]l tribunal **tomará en consideración** la opinión de la víctima sobre si se le debe conceder o no este beneficio **e impondrá los términos y condiciones que estime razonables** y el período de duración de la libertad a prueba que tenga a bien requerir". Íd.

Del texto antes citado, se desprende que la víctima en casos de violencia doméstica tiene un derecho estatutario a expresar su opinión y que esta sea considerada por el tribunal al momento de decidir si concede al victimario los beneficios del desvío del procedimiento. Véase Art. 3.6 de la Ley Núm. 54, *supra*. No obstante, al igual que en Pueblo v. Dávila Delgado, *supra*, este derecho no convierte a la víctima en parte para efectos del proceso criminal.

De igual forma, el Artículo citado no dispone que la opinión favorable de la víctima sea un requisito indispensable para conceder el programa de desvío al victimario. Art. 3.6 de la Ley Núm. 54, *supra*. Al contrario, el lenguaje de esta disposición legal reconoce al Tribunal la discreción de imponer los términos y condiciones que estime razonables, una vez considerada la opinión de la víctima. Íd.

Siendo así, es forzoso concluir que la víctima de violencia doméstica tiene derecho a expresar su opinión y que el Tribunal la considere antes de conceder al victimario el desvío de los procedimientos provisto por el Art. 3.6 de la Ley Núm. 54, *supra*. Sin embargo, la opinión de la víctima no

puede dejar sin efecto el compromiso asumido por el Ministerio Público, en una alegación preacordada, de sugerir que se evalúe si el victimario cualifica o no para dicho beneficio. Véase Pueblo v. Dávila Delgado, *supra*. Después de todo, tal decisión recae en el Tribunal de Primera Instancia, el cual mantiene su discreción en cuanto a la sentencia a dictarse, independientemente de la opinión de la víctima o de las recomendaciones de la defensa y el Ministerio Público en una alegación preacordada. Véanse Regla 72 de Procedimiento Criminal, *supra*; Art. 3.6 de la Ley Núm. 54, *supra*.

III.

En este caso, el Tribunal de Primera Instancia ya había aceptado el acuerdo suscrito entre el Ministerio Público y el señor Acosta Pérez. El acuerdo suscrito consistía en reclasificar el cargo previamente imputado de violación al Art. 2.8 de la Ley Núm. 54, *supra*, a una infracción al Artículo 3.1 de la misma ley, *supra*. También se acordó que el Ministerio Público **recomendaría** una pena de 1 año, 9 meses y 1 día, y **referiría** el caso a informe pre-sentencia para que se **evaluara** si el señor Acosta Pérez cualificaba para el programa de desvío. El Ministerio Público no garantizó que el Tribunal acogería lo recomendado. Incluso, la propia Moción sobre Alegación Preacordada presentada ante el foro primario advertía sobre la posibilidad y las consecuencias de que el Tribunal no aceptara la recomendación del Ministerio Público. Surge claramente del expediente que el Ministerio Público cumplió con lo acordado: reclasificó el delito imputado,

recomendó la pena pactada y sugirió la concesión del programa de desvío.

Por su parte, la defensa nunca solicitó que la alegación preacordada se dejara sin efecto. El señor Acosta Pérez tampoco ha alegado que se declaró culpable por desconocimiento de la ley o de los hechos, que su abogado o el Ministerio Público le engañaron o que fue coaccionado para que se declarara culpable. Fue el Tribunal de Primera Instancia el que, *motu proprio*, dejó sin efecto la alegación preacordada, luego de haberla aceptado y sin que alguna de las partes lo solicitara.

Como vimos en el acápite anterior, el hecho de que la perjudicada hubiera retirado su conformidad en la vista de dictar sentencia no impedía que el Tribunal de Primera Instancia, en el ejercicio de su discreción, impusiera la pena que entendiera correspondiente, incluyendo la recomendada en el preacuerdo. El foro primario debió *considerar* la opinión de la señora Montero Rivera como un factor adicional al momento de evaluar el informe pre-sentencia y determinar la sentencia que impondría.

Siendo así, el Tribunal de Primera Instancia no podía dejar sin efecto el preacuerdo *motu proprio* y mucho menos ordenar la celebración de una vista preliminar. Ciertamente, su proceder menoscabó los derechos constitucionales del señor Acosta Pérez, quien se declaró culpable bajo el entendimiento de que sería procesado por violar el delito grave de cuarto grado tipificado en el Art. 3.1 de la Ley Núm. 54, *supra*, y no por el delito grave de tercer grado tipificado en el Art.

CC-2013-889                                                      15

2.8 de la misma ley, *supra*. Véase, además, <u>Pueblo v. Pérez Adorno</u>, *supra*.

A su vez, dejar sin efecto la alegación de culpabilidad y revertir el caso a vista preliminar obliga innecesariamente a la perjudicada a reiniciar el proceso criminal, en el cual tendría que testificar y confrontar nuevamente a su victimario. Como bien señala el Ministerio Público, debemos tener presente que ello podría comprometer el interés y la capacidad de la perjudicada en continuar con el proceso.

## IV.

Por los fundamentos antes expuestos, se revoca la Sentencia emitida por el Tribunal de Apelaciones y se devuelve el caso al Tribunal de Primera Instancia para que dicte la sentencia correspondiente.

Se dictará Sentencia de conformidad.

Federico Hernández Denton
Juez Presidente

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Pueblo de Puerto Rico

    Peticionario

        v.                         CC-2013-889

Certiorari

Nataniel Acosta Pérez

    Recurrido

SENTENCIA

San Juan, Puerto Rico, a 9 de abril de 2014.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, se revoca la Sentencia emitida por el Tribunal de Apelaciones y se devuelve el caso al Tribunal de Primera Instancia para que dicte la sentencia correspondiente.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo.

Aida I. Oquendo Graulau
Secretaria del Tribunal Supremo